IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANNE RENEE CONNER, | No. 2:13-CV-2423-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____ / | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on May 18, 2010. In the application, plaintiff claims that disability began on December 20, 2008. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 9, 2012, before Administrative Law Judge ("ALJ") Bradlee S. Welton. In a June 29, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine; degenerative joint disease status post knee surgeries, both knees; morbid obesity; headache; asymptomatic Hepatitis C; depression; and anxiety;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: she can perform sedentary work except: she can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 2 hours; sit for 6 hours; occasionally climb stairs, crouch, balance, and stoop; cannot climb ladders, ropes, or scaffolds, crawl, or kneel; she can perform simple repetitive tasks; she can occasionally interact with co-workers and the public, but she cannot maintain sustained contact;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on September 25, 2014, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff provides the following "Overview":

> Defendant, the Acting Commissioner of Social Security, decided it is copacetic to deny Ms. Conner the benefit of Title II wage withholdings without having the Commissioner's administrative law judge review submitted medical records. Although the records of Ms. Conner's treating physician from when she applied for benefits are referenced in statements made by the Commissioner's consultative examiners, those medical records are not part of the record compiled and considered by the administrative law judge or certified to this Court. A denial of benefits decision is not allowed to stand on such uncertain ground. . . .

She then raises the following specific arguments: (1) the ALJ erred by failing to provide clear and convincing reasons for rejecting plaintiff's testimony as not credible; (2) the ALJ failed to develop the record regarding plaintiff's mental limitations ; and (3) the ALJ failed to consider evidence from plaintiff's treating physician, Dr. Cashero.

A. **Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

4

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible. . . .
>
> In particular, the record reveals inconsistent information which challenges the claimant's full credibility. Medical evidence of record shows doctor notes at the time of her left hand injury showing the claimant had very limited motion of her affected fingers but when distracted most movements with the fingers could occur, with minimal discomfort (Exhibit 1F/7). Similarly, when examined three months after her knee surgery, doctor notes indicate the presents evidence of variable effort on testing of the leg, but has some moderate limitations in range of motion at that time (Exhibit 1F/14). Although the inconsistent information from the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable. In addition, the undersigned finds the claimant's credibility is reduced due to a lack of documentation as well as the historic nature of her impairments. When combined with the rather ordinary physical exam findings, the absence of severe abnormalities in diagnostic testing and medical imagery, and the limited record of treatment, the undersigned is not persuaded the claimant is completely disabled from all working functions by her impairments.

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting her testimony that she required the use of an ambulatory assistive device. Plaintiff also argues that the ALJ erred by failing to provide clear and convincing reasons for finding her testimony as to limitations on walking, standing, lifting, kneeling, stooping, and climbing is not credible.

A common theme of plaintiff's arguments is her assertion that the ALJ was required to provide clear and convincing reasons for rejecting her testimony "because there is not finding of malingering." The court disagrees with the premise of this contention. As noted by the ALJ, doctors observed "variable effort on testing." Given this record, the ALJ was not required to articulate clear and convincing reasons.

Turning to plaintiff's allegation that she required the use of an ambulatory assistive device, plaintiff argues: "Instead of discussing Conner's need for a cane and a knee

6

brace, ALJ Welton found Conner's statements lacked credibility." Again, the court does not agree with the premise of this assertion because, contrary to plaintiff's characerization of the hearing decision, the ALJ discussed plaintiff's need for ambulatory assistive devices by noting the medical opinions of record which reflected no such need. The ALJ also properly noted plaintiff's conservative course of treatment as well as "rather ordinary physical exam findings." Finally, though plaintiff contends that the ALJ failed to note that a cane had been prescribed to her, she cites to no evidence in support of this statement.

Regarding the ALJ's conclusion that plaintiff's remaining testimony is not credible, the court finds that the ALJ's analysis is supported by the medical evidence, which the ALJ summarized as follows:

> In December 2008, the claimant suffered a work related fall, causing injury to the left knee (Exhibit 1F/14). MRI of the left knee (2/2009) showed joint effusion and degeneration or tear of the lateral meniscus, which led to her June, 2009 surgery on the left knee. Report of October, 2009 was a diagnosis of degenerative joint disease of the left knee and she is released to full work duty, but no more than thirty minutes of standing and walking at a time and no lifting more than 20 pounds (Exhibit 1F/14). Substantial weight is accorded this limitation since it is from a treating source at the time, and is supported by the then recent surgery on her knee. However, it is not accorded great weight, for the treatment records from 2009 to the present reflect no abnormalities of the knee upon regular physical exam and there is no further treatment either by physical therapy, injections, or other more significant means of relieving pain.
>
> From April, 2006 through November, 2010 the claimant is seen at Clinton Free Medical Clinic for temporary ailments, occasional back pain and is treated for major depressive disorder and anxiety with phychotropic medications (Exhibit 6F, 7F , 8F). Physical exam findings are consistent in noting she is alert, cooperative, in no apparent distress, age appropriate, and oriented with memory intact. She reports no mental abnormalities but once the records note that "her nerves on end" (Exhibit 8F/8).
>
> The only other treatment records for the period at issue, from the established onset date December 20, 2008 to the present, are from Shasta Community Health Center (SCHC) (Exhibit 10F). These show the diagnosis of Hepatitis C and the increase in depression and anxiety she experiences as a result in March 2012 (Exhibit 10F/2, 6). Her chronic problems are Generalized Anxiety Disorder, Hepatitis C, Hypertension, lower back pain, major depressive disorder, persistent headache, and transient ischemic attack (Exhibit 10F/2). Notes record she started with Cymbalta in August 2011, and it works well; she feels stable despite

stressful times; she takes a Lorazepam when she is really anxious which helps (Exhibit 10F/6). In addition, the notes reveal she had been on Prozac for nearly four years, as of December 2011 (Exhibit 10F/25). Physical exam findings are within normal limits, consistently. At a March 2012 physical exam, it is noted she walks without a cane, sits comfortably, and there are no musculoskeletal abnormalities upon testing (Exhibit 10F/7). Lower back pain is noted to be chronic and stable; over the counter medications are recommended for pain.

She is taking aspirin for transient ischemic attack which is of unclear etiology; she is strongly counseled to lose weight, exercise, and stop smoking; CAT scan of the brain in March 2012 was unremarkable, i.e,. Normal (Exhibit 10F/28). Hospital records from a 2007 transient ischemic attack show resolution with treatment and no significant cardiac abnormalities (Exhibit 11F and 12F). Diagnostic testing and medical imagery in the record shows no abnormalities on myocardial perfusion imaging (4/2009) (Exhibit 1F).

These records also show her reporting that she has occasional debilitating pain in the lower back and between the shoulder blades status post her 2001 work injury and shoulder decompression surgery (Exhibit 9F). She sleeps in her recliner when the pain is severe (Exhibit 10F/6). However in 2002, imagery of the lumbar spine showed a tiny disc protrusion with high signal annular tear L5-S1-S1 and minimal degenerative changes (Exhibit 9F/5). She was treated with medications, as well as epidural injections (Exhibit 9F/2). Permanent work restrictions are no lifting more than 30 pounds, and limited squatting and stooping (Exhibit 9F/3). . . .

Overall, this record shows. . .minimal evidence of any severely disabling impairment, either individually or in combination. This finding is supported by the examination results of Dr. King.

The claimant was evaluated in October 2010 by consulting examiner Dr. Robert King (Exhibit 2F). He found the claimant obese, alert and oriented, and slightly anxious. Musculoskeletal examination showed some decreased range of motion of the lumbar spine, with full range of motion of the upper extremities, but some mildly decreased range of motion of the lower extremities, in particular the knee, secondary to pain, and obese condition. Strength in arms and legs was normal. Neurological exam showed the claimant to be alert, have fluent speech, clear thought processes, normal articulation, normal memory and concentration. Sensation and deep tendon reflexes are normal, but she had positive straight leg raise for both legs, with a fairly unstable gait, and limp. He assessed back and leg pain, but that she is not on any really strong medications, and the pain is not well controlled with Ibuprofen and Flexeril. He also noted the pain was not overwhelmingly impressive. Dr. King provided no opinion as to the claimant's working functionalities.

As for the opinion evidence, in November 2010, the State Agency non-examining Dr. Janet Rodgers opined the claimant could lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk

>six hours of an eight hour day; push/pull unlimitedly (Exhibit 3F).  She also opined she could balance, bend, climb, crawl, crouch, kneel, and stoop occasionally. . . .

This medical evidence, which shows minimal objective findings, minimal treatment, and positive results with medication, supports the ALJ's conclusion that plaintiff's testimony of disabling symptoms is not credible.

### B. Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty.  See  Tonapetyan, 242 F.3d at 1150.  The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff argues that the ALJ failed to develop the record regarding her mental residual functional capacity and, instead, reached a conclusion in the absence of any medical opinion evidence.  This argument is unpersuasive.  To the extent plaintiff believes the record which was before the ALJ was insufficient, the ALJ addressed this concern by holding the record open.  As defendant notes, it was plaintiff's duty to supply medical evidence supporting her claims, including her claims relating to mental limitations, and she failed to do so.

The court finds that the record showing plaintiff's minimal treatment for mental impairments, as well as plaintiff's own statements, constitute substantial evidence to support the

ALJ's mental residual functional capacity assessment.  Specifically, from April 2006 through November 2010, findings from the Clinton Free Medical Clinic reflect treatment for depression and anxiety with medication.  Plaintiff reported only that "her nerves [are] on end." Additionally, records from the Shasta Community Health Center reflect an increase in depression and anxiety in March 2012.  As the ALJ noted, treatment records indicate that plaintiff's depression and anxiety were being treated with Prozac and Cymbalta, and occasionally Lorazepam.  Finally, plaintiff reported that medication was working well and that she felt stable despite stressful times.

### C. **Dr. Cashero's Records**

Plaintiff argues that the ALJ erred by failing to include treating physician Cashero's progress notes in the administrative record.  As defendant notes, however, plaintiff has neither identified the contents of the allegedly missing records, nor provided such records to this court.  Plaintiff's conclusory argument is rejected.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 16) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 17) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: October 30, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE